UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X

CHARLIE ABUJUDEH,

                    Plaintiff,

        - against –

PATRICK SMITH, ESQ., and SMITH
VILLAZOR LLP,

                    Defendants.

------------------------------X

**MEMORANDUM AND ORDER**

24 Civ. 4318 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

        Between January and July 2020, plaintiff Charlie Abujudeh ("plaintiff" or "Abujudeh") allegedly participated in a market manipulation scheme to fraudulently sell penny stocks through aggressive and deceptive tactics.  By late 2020, Abujudeh had allegedly generated $9.1 million in illicit proceeds from this scheme.

        The Department of Justice ("DOJ") filed a complaint against Abujudeh in the Eastern District of New York on July 21, 2021.  In May 2022, he pled guilty to one count of conspiracy to commit securities fraud.  The Honorable Pamela K. Chen subsequently sentenced Abujudeh to two years' probation, banned him from trading in penny stocks for life, and ordered forfeiture to the Department of Justice of approximately $253,000.

-1-

Separately, the Securities and Exchange Commission ("SEC") filed a civil complaint against Abujudeh on July 22, 2021. The parties agreed to a settlement in January 2023, pursuant to which the SEC imposed a five-year penny stock ban on plaintiff and Abujudeh agreed to pay a fine of $5,053,403 to the SEC.

Plaintiff now asserts claims for fraud and fraudulent inducement against his former attorneys, Patrick Smith, Esq. and Smith Villazor LLP, who represented him in connection with the parallel DOJ and SEC proceedings.[1] Despite his admitted guilt, plaintiff contends that he never would have been charged if not for defendants' purported fraud. Defendants move to dismiss. For the following reasons, defendants' motion is granted.

<u>**BACKGROUND**</u>

## I.    **Factual Background**[2]

In August 2019, Abujudeh allegedly purchased 2.5 million shares in a microcap company for approximately $100,000 (4 cents

---

[1]    While the amended complaint alleges that the defendants withdrew as counsel of record in both the DOJ and SEC proceedings, ECF No. 15 ¶ 98, defendants never filed a notice of appearance in the DOJ action, <u>see</u> <u>United States v. Abujudeh</u>, No. 22 Crim. 161 (PKC) (E.D.N.Y.). Still, it is undisputed that defendants represented Abujudeh during the pendency of the DOJ investigation, and defendant Patrick Smith represented him at his arraignment. <u>See</u> <u>United States v. Abujudeh</u>, No. 22 Crim. 161, Minute Entry dated July 28, 2021 (E.D.N.Y.).

[2]    Unless otherwise noted, the facts considered and recited herein are drawn from plaintiff's amended complaint and are accepted as true for the purposes of the instant motion. <u>See</u> <u>McCarthy v. Dun & Bradstreet Corp.</u>, 482 F.3d 184, 191 (2d Cir. 2007). In evaluating the sufficiency of a complaint, a district court may also consider documents that are attached to the complaint, incorporated by reference in the complaint, or otherwise integral to the complaint. <u>See</u> <u>DiFolco v. MSNBC Cable L.L.C.</u>, 622 F.3d 104, 111 (2d Cir. 2010). In addition, "courts

-2-

per share), controlling approximately 98% of the deposited shares available for trading.  See <u>United States v. Abujudeh</u>, 22 Crim. 161, ECF No. 1 (Criminal Complaint) ¶ 18 (E.D.N.Y. July 21, 2021).

Between January and March 2020, Abujudeh allegedly hired a "call room" to artificially inflate the microcap company's stock through aggressive and deceptive sales tactics, paying a 35% kickback for sales of the stock.  <u>Id.</u> ¶¶ 6, 19-36, 38-41.  For example, the call room allegedly convinced an unsophisticated investor to liquidate his holdings in a diversified, target-date retirement fund to purchase shares in the microcap company.  <u>Id.</u> ¶ 39.  The unsophisticated investor purchased 61,800 shares for approximately $126,000 before he ultimately sold his shares at a loss of approximately $39,533.  <u>Id.</u> ¶¶ 39-42.  Similarly, between March and July 2020, Abujudeh allegedly funded a digital marketing campaign to promote the stock to potential investors without disclosing his control of nearly all the deposited shares available for trading.  <u>Id.</u> ¶ 43.

By late July 2020, Abujudeh allegedly "sold all of his 2.5 million shares [in the microcap company,] generating approximately $2.6 million in proceeds."  <u>Id.</u> ¶ 44.  The FBI learned of Abujudeh's activities through recorded phone calls and text messages wherein

---

routinely take judicial notice of documents filed in other courts [] not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."  <u>Kramer v. Time Warner Inc.</u>, 937 F.2d 767, 774 (2d Cir. 1991).

Abujudeh "discussed various aspects of the market manipulation scheme" with his co-conspirators.  Id. ¶¶ 2, 17, 25, 28, 30, 33, 35.

Around this same time, Abujudeh allegedly engaged in a similar market manipulation scheme as it related to the stock of two other publicly traded companies, generating approximately $3.2 million in illicit proceeds by selling his stock in one company and another $3.3 million in illicit proceeds from sales of a separate company's stock.  See SEC v. Abujudeh, No. 21 Civ. 4110, ECF No. 1 (Civil Complaint) ¶¶ 10, 100-110 (E.D.N.Y. July 22, 2021).

Between April and August 2021, defendants Patrick Smith, Esq., and Smith Villazor LLP represented plaintiff Charlie Abujudeh while he was the subject of parallel DOJ and SEC investigations.  ECF No. 15 ("AC") ¶¶ 1, 5, 16, 18, 98.  According to plaintiff's amended complaint, Abujudeh repeatedly informed defendants that he wanted to fully cooperate with both the SEC and DOJ during this period, but defendants prolonged the proceedings so they could generate "huge legal fees."  Id. ¶¶ 26-34, 38.

At the outset of their representation, defendants prepared, and plaintiff signed, a retainer agreement, which required a payment of $175,000 upon execution.  Id. ¶¶ 22-25.[3]  Before

---

[3]     Defendants filed an attorney affidavit with supporting exhibits, including the executed and draft retainer agreements, ECF No. 27, along with a corresponding motion to seal the two retainer agreements, ECF No. 19.  Plaintiff

executing this retainer agreement, defendant Smith allegedly represented "that he would facilitate conversations with both the SEC and DOJ about settlement[,]" although plaintiff contends that defendants "knew full well that they were not going to pursue any cooperation with either the SEC or DOJ." Id. ¶¶ 19, 20, 147.

Less than a month later, defendants prepared a new retainer agreement which contained three tiers of fixed fees: (1) a fixed fee of $175,000 for the pre-filing phase of the DOJ and SEC actions, (2) a fixed fee of $425,000 if an action was brought but did not result in a trial, and (3) a fixed fee of $825,000 if a trial did occur. Id. ¶¶ 39-47. Plaintiff did not sign the new retainer agreement. Id. ¶ 91.

On June 9, 2021, Abujudeh appeared before the SEC. Id. ¶¶ 49-53. Although Abujudeh was willing to cooperate fully, defendants advised him that he should not respond to any questions except to assert his Fifth Amendment rights. Id. Abujudeh followed his counsel's advice, and, according to Abujudeh, the "hearing was a disaster." Id. ¶¶ 58-61. Afterwards, Abujudeh urged defendants to settle "at any cost." Id. ¶ 65. As pled in the amended complaint, despite advising plaintiff that "they would settle with both the SEC and DOJ," defendants did not contact

---

has no objection to this motion, see id., and the Court grants defendants' motion to seal, ECF No. 19.

either agency to discuss plaintiff's intention to cooperate.  Id.
¶¶ 63-65.

In early July 2021, Abujudeh again told the defendants that
he wanted to cooperate with the SEC and DOJ, but defendants
"falsely advised that both the SEC and DOJ were not interested in
settling with him."  Id. ¶ 67.  Around this same time, defendants
allegedly advised Abujudeh that the new Assistant United States
Attorney ("AUSA") in charge of the DOJ action refused to engage in
settlement discussions.  Id. ¶ 68.  According to plaintiff's
pleading, this was false, as there was no new AUSA.  Id. ¶ 71.
Further, plaintiff asserts that defendants told the SEC and DOJ
that Abujudeh would not cooperate under any circumstance and the
agencies "should do what they needed to do."  Id. ¶ 72.

On July 21, 2021, DOJ commenced an action against Abujudeh,
raided his home, and arrested him in front of his family.  Id. ¶¶
73-74.  The next day, the SEC filed an emergency action, freezing
his bank accounts.  Id. ¶¶ 77-78.  After posting bail, Abujudeh
again told defendants that he would like to settle.  Id. ¶ 85.

In August 2021, Abujudeh retained new counsel and defendants
ceased representing Abujudeh.  Id. ¶ 98.  Plaintiff immediately
began cooperating with both agencies.  Id. ¶¶ 99-132.  Through his
new counsel, plaintiff learned of defendants' purported
misrepresentations to the SEC and DOJ.  Id.  Plaintiff alleges

that, "[b]ut for Defendant's aforementioned fraudulent statements, Plaintiff would never have been charged by either the SEC or DOJ." Id. ¶ 134.

In April 2022, plaintiff entered into a cooperation agreement with the DOJ.  Id. ¶ 132.  Plaintiff alleges that, "as a direct result of Defendant[s'] aforementioned fraud, . . . Plaintiff's only options were to agree to a plea deal, on the terms set forth by the SEC and DOJ, or risk going to trial and with respect to the DOJ action[,] . . . possible incarceration."  Id. ¶ 133.

In May 2022, Abujudeh pled guilty to one count of conspiracy to commit securities fraud in the DOJ action.  See United States v. Abujudeh, 22 Crim. 161, ECF Nos. 49, 49-1 (E.D.N.Y. Apr. 9, 2024); AC ¶ 118.  He was later sentenced to two years' probation and banned from trading in penny stocks for life.  See United States v. Abujudeh, 22 Crim. 161, ECF Nos. 49, 49-1 (E.D.N.Y. Apr. 9, 2024); AC ¶ 137.  Plaintiff also agreed to pay a fine of approximately $253,000 to the DOJ.  AC ¶ 135.

Additionally, as part of a settlement executed in connection with the SEC action, the SEC imposed a five-year penny stock ban. Id. ¶¶ 133, 137.  Plaintiff agreed to pay a fine of $5,053,403 to the SEC, as he was "liable for disgorgement of $4,523,045 representing net profits gained as a result of the conduct alleged in the [SEC] Complaint, together with prejudgment interest thereon

in the amount of $115,993, and/or a civil penalty in the amount of $414,366 pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)]."  SEC v. Abujudeh, 21 Civ. 4110, ECF No. 32 (Final Judgment) at 4-5 (E.D.N.Y. Jan. 20, 2023); AC ¶ 135.

Plaintiff alleges that, "in addition to the fines, Plaintiff also paid more than $600,000.00 to retain counsel to mitigate the damage caused by Defendants' fraud." AC ¶ 136.  Plaintiff alleges that defendants' misrepresentations to DOJ and SEC "directly led to [plaintiff's] charges, arrest, incarceration, guilty plea, asset seizure, forfeiture, and the financial damages he was required to pay."  Id. ¶ 118.

## II.  Procedural History

In June 2024, following plaintiff's filing of his initial complaint in state court, defendants removed this action to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.  ECF No. 1. Plaintiff's initial complaint asserted three causes of action: violation of N.Y. Judiciary Law § 487, legal malpractice, and fraud.  ECF No. 1-1.

In accordance with this Court's Individual Practices, defendants submitted a pre-motion letter describing their anticipated motion to dismiss.  ECF No. 10.  Among other reasons, defendants argued that plaintiff's legal malpractice cause of

-8-

action was deficient because it was time-barred under the applicable statute of limitations and failed to allege his innocence. <u>Id.</u> at 2. After plaintiff submitted a response to defendants' letter, ECF No. 11, the Court determined that defendants could bring their motion without the necessity of a pre-motion conference and allowed plaintiff to file an amended complaint before defendants filed their motion, ECF No. 12.

In his amended complaint, plaintiff withdrew his claims for a violation of N.Y. Judiciary Law § 487 and legal malpractice, instead relying on his pre-existing fraud claim and asserting a new claim of fraudulent inducement. ECF No. 15 (AC); <u>see also</u> ECF No. 16-1 (redline comparing amended complaint to initial complaint).

On December 10, 2024, defendants submitted their motion to dismiss, ECF No. 26, and a supporting memorandum of law, ECF No. 28 ("Def. Br."). Plaintiff opposed defendants' motion to dismiss, ECF No. 30 ("Opp."), and filed a declaration that largely reiterated the allegations in his amended complaint, ECF No. 29. Defendants later replied to plaintiff's opposition. ECF No. 31 ("Reply").

## **LEGAL STANDARD**

To withstand a motion to dismiss under Rule 12(b)(6), a non-movant's pleading "must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the [pleaded] fact[s] . . . allow[] the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." Id. A court "must accept as true all factual claims in the complaint and draw all reasonable inferences in the plaintiff's favor." Sacerdote v. Cammack Larhette Advisors, LLC, 939 F.3d 498, 507 (2d Cir. 2019). However, "'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" Brown v. Daikin Am., Inc., 756 F.3d 219, 225 (2d Cir. 2014) (quoting Iqbal, 556 U.S. at 678).

## DISCUSSION

Upon learning that defendants opposed this action on statute of limitations grounds, plaintiff abandoned his legal malpractice claim and added a fraudulent inducement claim. See ECF No. 16-1 (redline comparing amended complaint to initial complaint). Nevertheless, defendants continue to maintain that plaintiff's fraud and fraudulent inducement claims are time-barred and insufficiently pled because they are based on the same underlying factual allegations as his abandoned legal malpractice claim. See Def. Br. 10-12, 17, 20-22; Reply 1-4, 7-8.

-10-

In the discussion below, we first address the nature of plaintiff's causes of actions for fraud and fraudulent inducement, before determining whether those causes of action are time-barred and, separately, whether the complaint's allegations are sufficient to state a claim.

## I. Nature of Claims

A fraud claim is not duplicative of a malpractice claim to the extent "it arises from 'one or more affirmative, intentional misrepresentations' that caused damages 'separate and distinct from those generated by the alleged malpractice.'" Meskunas v. Auerbach, No. 17 Civ. 9129 (VB), 2019 WL 719514, at *4 (S.D.N.Y. Feb. 20, 2019) (citation omitted). Stated otherwise, a claim of fraud must be based on "something more egregious than mere concealment or failure to disclose one's own malpractice." Choina v. Albanese, No. 12 Civ. 3241 (MKB), 2013 WL 1316747, at *4 (E.D.N.Y. Mar. 29, 2013) (citation and quotation marks omitted).

A comparison of plaintiff's initial and amended complaints establishes that his fraud and fraudulent inducement causes of action are thinly veiled malpractice claims. In his initial complaint, plaintiff asserted a legal malpractice claim, stating that, "[s]olely as a result of defendant's negligence, Plaintiff was and is permanently banned from penny stocks" and "Plaintiff was also ordered to pay fines in excess of $5,300,000.00." ECF

No. 1-1 ¶ 142. Plaintiff also alleged that, "[b]ut for defendant's negligence, plaintiff would not have been arrested, banned, and ordered to pay fines to the SEC and DOJ in excess of $5,300,000.00." Id. ¶ 143. Plaintiff further alleged that he "paid more than $600,000.00 to retain counsel to mitigate the damage caused by Defendants' negligence." Id. ¶ 131. In his initial complaint, plaintiff sought a money judgment of "not less tha[n] $5,300,000.00" for both his fraud and malpractice causes of action. Id. at pp. 24.

In his amended complaint, plaintiff struck the references to "negligence" and "malpractice," but sought the same amount of damages for the same underlying conduct. ECF No. 16-1 (Redline) ¶¶ 1, 133-137; AC ¶¶ 1, 133-137. For example, replacing the word "negligence" with "fraud," plaintiff now alleges that, "in addition to the fines, Plaintiff also paid more than $600,000.00 to retain counsel to mitigate the damage caused by Defendants' fraud." AC ¶ 136. Plaintiff also seeks a money judgment "not less tha[n] $5,300,000.00" for both his fraud and fraudulent inducement causes of action. Id. at pp. 22.

The crux of plaintiff's fraud and fraudulent inducement claims is defendants' alleged malpractice, as demonstrated by plaintiff's opposition to the current motion. In one section of his opposition, plaintiff concedes that his fraud "claim is that

the Defendants, in breach of their duty as his attorneys, . . .
failed to carry out the agreed upon defense strategy." Opp. at
12. He also argues that "Defendants [] ignored their agreed upon
representation agreement and employed the exact opposite legal
strategy" than what they promised. Id. at 2. However, a claim of
fraud must be based on "something more egregious than mere
concealment or failure to disclose one's own malpractice." Choina,
2013 WL 1316747, at *4 (citation and quotation marks omitted).
Thus, plaintiff's fraud and fraudulent inducement allegations are
duplicative of his abandoned legal malpractice claim.

## II.  Statute of Limitations

Having concluded that plaintiff's fraud and fraudulent
inducement causes of action are thinly veiled malpractice claims,
we now address whether plaintiff's fraud and fraudulent inducement
claims are time-barred. See Def. Br. 20-22; Reply 7-8.

Both parties agree that, in determining which statute of
limitations period applies, a court must "look for the reality,
and the essence of the action and not its mere name." See Def.
Br. 20-22; Opp. 16-17; Reply 7-8; Brick v. Cohn-Hall-Marx Co., 276
N.Y. 259, 264 (1937) (same); De Carlo v. Ratner, 204 F. Supp. 2d
630, 637 (S.D.N.Y. 2002) (same), aff'd, 53 F. App'x 161 (2d Cir.
2002).

Because plaintiff's fraud and fraudulent inducement claims sound in malpractice, see supra pp. 11-13, the statute of limitations for a malpractice claim applies, as a plaintiff "cannot benefit from the longer fraud statute of limitations when he is asserting what is actually a legal malpractice claim." Tenamee v. Schmukler, 438 F. Supp. 2d 438, 446 (S.D.N.Y. 2006); see also Hsu v. Liu & Shields LLP, 7 N.Y.S.3d 119 (1st Dep't 2015) (collecting cases); Adamson v. Bachner, No. 01 Civ. 10213 (JSM), 2002 WL 31453096, at *3 (S.D.N.Y. Oct. 31, 2002) ("Plaintiff should not be entitled to the longer statute of limitations for fraud claims simply because the Complaint couches the malpractice conduct in terms of fraud."); Daniels v. Turco, 923 N.Y.S.2d 848, 848-49 (2d Dep't 2011) (finding fraud claim to be time-barred where "it arises from the same facts as the legal malpractice cause of action and does not allege distinct damages"); Opp. 16-17 (similar).

As this Court's jurisdiction is based on diversity, and the causes of actions are based in common law, we apply the statute of limitations of the forum state. Under New York's borrowing statute, N.Y. C.P.L.R. § 202, "when a non-resident sues in New York on a cause of action accruing outside New York, the applicable statute of limitations is the shorter of (1) New York's limitations period and (2) the limitations period of the state where the claim accrued." Luv N' Care Ltd. v. Goldberg Cohen, LLP, No. 15 Civ.

9248 (NRB), 2016 WL 4411419, at *5 (S.D.N.Y. Aug. 18, 2016) (citation omitted), aff'd sub nom. Luv N' Care, Ltd v. Goldberg Cohen, LLP, 703 F. App'x 26 (2d Cir. 2017). Plaintiff's claims accrued in California, where he resides, AC ¶ 2, because when "an alleged injury is purely economic," plaintiff's claim "accrue[s] where the plaintiff resides and sustains the economic loss," Luv N' Care, 2016 WL 4411419, at *5 (citation and quotation marks omitted). California applies a one-year statute of limitations, which runs from plaintiff's discovery of the alleged malpractice. See Cal. Civ. Proc. Code § 340.6; Smith v. Ramis, 647 F. App'x 679, 680 (9th Cir. 2016).

Plaintiff did not bring his claims within one year of discovering the alleged wrongdoing. Abujudeh allegedly discovered defendants' malpractice in 2021, AC ¶¶ 38, 48, 87, 100, 104, 114, 115, more than one year before he brought this suit in June 2024, ECF No. 1-1. Therefore, plaintiff's claims are time-barred.

### III. Failure to State a Claim

Even assuming arguendo that his claims are not time-barred, plaintiff's claims are properly understood as malpractice claims and, therefore, the amended complaint fails to state a claim.

It is undisputed that the elements of fraud and fraudulent inducement are "substantially the same." Def. Br. 12; Opp. 14; Green Star Energy Sols., LLC v. Edison Props., LLC, No. 21 Civ.

2682 (LJL), 2022 WL 16540835, at *5 (S.D.N.Y. Oct. 28, 2022) (citation and quotation marks omitted). Both claims require a showing of causation, such that "the defendant's misrepresentation 'directly and proximately caused'" plaintiff's damages. Amusement Indus., Inc. v. Stern, 693 F. Supp. 2d 327, 352 (S.D.N.Y. 2010) (citation omitted); see also Bank of Am. Corp. v. Lemgruber, 385 F. Supp. 2d 200, 218 (S.D.N.Y. 2005) ("[A] fraudulent inducement claim also requires a showing of proximate causation[.]" (citations and quotation marks omitted)).

Plaintiff's complaint fails to establish causation. Plaintiff alleges that, "[b]ut for Defendant's aforementioned fraudulent statements, Plaintiff would never have been charged by either the SEC or DOJ." AC ¶ 134. Plaintiff further alleges that defendants' misrepresentations to DOJ and SEC "directly led to [plaintiff's] charges, arrest, incarceration, guilty plea, asset seizure, forfeiture, and the financial damages he was required to pay." Id. ¶ 118.

However, plaintiff pled guilty to his role in the market manipulation scheme. See United States v. Abujudeh, 22 Crim. 161, ECF Nos. 49, 49-1 (E.D.N.Y. Apr. 9, 2024). His admission of guilt as to the underlying charge severs the chain of causation between defendants' purported misrepresentations and plaintiff's alleged damages. See Assifuah v. Cohen, No. 20 Civ. 5050 (AT), 2022 WL

-16-

7049776, at *3 (S.D.N.Y. Oct. 12, 2022) (dismissing fraud claims, among others, as "no malpractice claim, or claims that sound in malpractice, are actionable" where plaintiff "does not allege that he is innocent, and the conviction remains undisturbed"); Kerik v. Tacopina, 64 F. Supp. 3d 542, 564 (S.D.N.Y. 2014) (finding that plaintiff's malpractice claim failed because he could not show that he "would not have sustained any ascertainable damages" "but for the attorney's conduct" "[g]iven that the plaintiff voluntarily admitted his guilt"); Hoffenberg v. Bodell, 2002 WL 31163871, at *8 (S.D.N.Y. Sept. 30, 2002) (holding in a legal malpractice case, "the proximate cause of plaintiff's damages was his plea, not defendant's representation").

Beyond the failure to establish causation, plaintiff's complaint is also barred in New York as a matter of public policy. "New York has a bright-line rule applicable to claims against an attorney arising from a representation of a plaintiff in a criminal proceeding." Ajaj v. MacKechnie, No. 07 Civ. 5959 (PKC) (DCF), 2008 WL 3166659, at *6 (S.D.N.Y. Aug. 4, 2008). To state such a claim, a plaintiff "'must allege his innocence or a colorable claim of innocence of the underlying offense, for so long as the determination of his guilt of that offense remains undisturbed, no cause of action will lie.'" Klein v. Talkin, Muccigrosso & Roberts, L.L.P., 415 F. App'x 288, 289 (2d Cir. 2011) (quoting

-17-

<u>Carmel v. Lunney</u>, 70 N.Y.2d 169, 173 (1987)). "New York courts have not limited this requirement to malpractice claims relating to the conviction," <u>id.</u> (citations omitted), as the "interests of judicial economy militate against a rule where litigious criminal defendants can occupy the time of their incarceration by pursuing civil actions against their former attorneys," <u>Britt v. Legal Aid Soc., Inc.</u>, 95 N.Y.2d 443, 449 (2000). Plainly stated, this rule applies to "all claims, regardless of the label attached to them, where the gravamen of the complaint is an attorney's failure to adequately and competently represent a defendant." <u>Ajaj</u>, 2008 WL 3166659, at *6 (dismissing a fraud claim, among others, for failing to establish actual innocence). Here, plaintiff has not asserted any credible claim of actual innocence, warranting dismissal of his amended complaint.[4]

---

[4]    Plaintiff concedes that "civil torts actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments." Opp. 11 (citation and quotation marks omitted). Yet plaintiff argues that he "makes no effort to collaterally attack his guilty plea." <u>Id.</u> at 12. This is belied by even a cursory review of his amended complaint. <u>See, e.g.</u>, AC ¶ 134 ("But for Defendant's aforementioned fraudulent statements, Plaintiff would never have been charged by either the SEC or DOJ.").

Defendants also argue that plaintiff has failed to adequately allege fraudulent intent. Def. Br. 13-16; Reply 4-5. Given that plaintiff's amended complaint wholly fails to state a claim, the Court does not need to resolve this additional issue.

## CONCLUSION[5]

For the foregoing reasons, defendants' motion is granted. The Clerk of Court is respectfully directed to terminate all pending motions, enter judgment for all defendants, and close the case.

Dated:    September 18, 2025
          New York, New York

_____
NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

---

[5]    The Court understands that defendants requested oral argument.  ECF No. 22; Def. Br.; Reply.  However, given that our decision is based on clear legal doctrine, the Court determined that oral argument would not be productive.